ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This attorney disciplinary proceeding involves one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Heyward G. Jeffers, Jr., an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
In October 1998, Rodrick Jeanpierre was arrested in East Baton Rouge Parish following a traffic stop. Police officers had seized a bag of a white powdery substance, which they believed to be cocaine, and a hidden firearm from the vehicle he was operating. At the time of the arrest, Mr. Jeanpierre asserted the white powder was soap detergent he utilized to detail cars and that he had no knowledge of the firearm.
Thereafter, Mr. Jeanpierre was charged by bill of information with three counts of criminal charges involving possession of a controlled dangerous substance with the intent to distribute, possessing a firearm while in possession of a controlled dangerous substance and being a convicted felon in possession of a firearm, in violation of La. R.S. 40:967 A, 14:95 E and 14:95.1, respectively.[1]
Mr. Jeanpierre retained respondent to represent him in the criminal proceedings. *1019 Over the course of ten months, respondent made approximately four court | ^appearances on behalf of Mr. Jeanpierre, and met briefly with him prior to each appearance. During this time, respondent failed to conduct any type of investigation into the case, nor did he take any steps to determine if there was validity to Mr. Jeanpierre’s claims that the substance found in his possession was not cocaine.
The case was scheduled for jury trial on February 7, 2000. Respondent apparently failed to advise Mr. Jeanpierre that the case was set for trial on the merits that day, and Mr. Jeanpierre believed he was merely going to court for a random periodic drug test. According to Mr. Jeanpierre, he was never advised by respondent the matter could proceed to a jury trial that day, and respondent had never discussed with him the defenses to be raised at trial.
After court convened, East Baton Rouge Assistant District Attorney Charles Grey produced an undated crime lab report, which indicated that the white powder found in the vehicle at the time of arrest was not cocaine or any other controlled dangerous substance. Accordingly, the State dismissed the two drug counts, leaving only the felon in possession of a firearm charge. Mr. Grey indicated to the court that the State intended to file habitual offender proceedings against Mr. Jean-pierre if the jury convicted him on the remaining charge. Despite this knowledge, respondent refused to enter into plea negotiations on behalf of his client.
Judge Morvant sought to commence with jury selection and requested that counsel submit their witness lists. Respondent requested a continuance, which the court denied. At that time, respondent admitted to the court that he did not have a witness list or any witnesses for presentation at trial.
Based on respondent’s exchange with the court, Mr. Jeanpierre became concerned over respondent’s obvious lack of trial preparation. Believing that he faced a mandatory minimum sentence of ten to fifteen years in prison, Mr. Jeanpierre, over 1 .^respondent's objection, elected to plead guilty to the lesser offense of attempted possession of a firearm by a felon, which carried a more lenient penalty. The court accepted the plea. Mr. Jeanpierre was sentenced as a habitual offender to five years incarceration and was immediately taken into custody.
The following day, Mr. Jeanpierre’s mother contacted Judge Morvant’s office and expressed concern over respondent’s handling of her son’s legal matter. Judge Morvant reviewed Mr. Jeanpierre’s case and discovered that Mr. Jeanpierre in fact had only one prior felony conviction and it formed the predicate for the offense to which he plead guilty. Accordingly, he concluded the prosecution erred in filing the habitual offender proceedings against Mr. Jeanpierre. Additionally, Judge Mor-vant recognized he had cited the wrong criminal statute during the plea proceedings, and that the controlling statute had no mandatory minimum sentence. Believing the threat of additional jail time had played into Mr. Jeanpierre’s decision to plead guilty, Judge Morvant intended to vacate the prior plea. He immediately notified Assistant District Attorney Grey to stop Mr. Jeanpierre’s transfer from jail to prison.
Judge Morvant reconvened the parties on February 11, 2000, after Mr. Jeanpierre had already served four days in jail. Assistant District Attorney Grey suggested that the State would let Mr. Jeanpierre *1020 enter a “best interest” plea to the possession of cocaine charge and place him on probation without any prison time, as long as the defense had no objection.[2] In the absence of any formal objection, Mr. Jean-pierre was resentenced to serve a period of probation.[3]
| ¿Subsequently, Judge Morvant filed a disciplinary complaint with the ODC. In his complaint, Judge Morvant asserted that respondent was unprepared for trial in this matter and, by his actions, placed his client in jeopardy.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following investigation, the ODC filed one count of formal charges against respondent alleging violations of Rules 1.1(a) (incompetence), 1.2(a) (scope of representation), 1.3 (lack of diligence), 1.4 (failure to communicate), 3.2 (failure to expedite litigation), 3.5(c) (engage in conduct intended to disrupt tribunal), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (conduct involving fraud, deceit, dishonesty, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent filed a general denial to the allegations of misconduct.

Formal Hearing

A formal hearing was conducted before the hearing committee. The ODC presented the testimony of Judge Morvant, Mr. Jeanpierre and Mr. Jeanpierre’s mother.
| .Judge Morvant corroborated the assertions made in his earlier complaint. He contended that respondent placed his client in great jeopardy, because Mr. Jean-pierre was facing mandatory prison time of ten to fifteen years. Judge Morvant further testified he believed there was “some type of conflict” between respondent and his client.
Mr. Jeanpierre testified at the formal hearing that he gave respondent the names of potential witnesses, but respondent did not contact them or conduct any pre-trial investigation. Mr. Jeanpierre further testified that respondent did not advise him of the scheduled trial date; rather, he only learned the trial was taking place that day when respondent saw him outside of the courtroom and asked what he was doing there. Further, Mr. Jean-pierre testified that he had never had any discussions with respondent about how the case would be defended or pleading guilty to the charges. He stated it was his idea to plead guilty to the lesser offense because he was going into court “blind,” there was “a whole bunch of confusion,” *1021 and he had the impression respondent was unprepared to proceed to trial.
Ms. Jeanpierre testified that she attended each of her son’s court appearances, even if it was for just a drug test. She maintained that she did not go on the day of her son’s scheduled trial because she had to go to work. Ms. Jeanpierre stated she also believed he was simply going to court for a random drug test since her son was dressed in his work uniform. She testified she contacted respondent after learning her son was sent to jail that day after pleading guilty to one of the pending criminal charges. Ms. Jeanpierre testified respondent advised her Mr. Jeanpierre mistakenly plead guilty because he became very confused at the trial. She alleged she subsequently contacted Judge Morvant’s office to advise of respondent’s mishandling of her son’s case.
| (¡Respondent presented no witnesses, but testified on his own behalf. He testified that he had been engaged in the practice of law for approximately fifty-three years and considered himself to be a “semi-retired solo practitioner.” Respondent stated he essentially limited his practice to criminal law. As to Mr. Jean-pierre’s case, respondent alleged he told the assistant district attorney that he would not engage in any plea negotiations until the criminal lab tests came back on the powdery substance found at the time of the arrest. Contrary to Mr. Jean-pierre’s testimony, respondent denied that Mr. Jeanpierre gave him the names of any persons that could assist in his investigation of the case. He further insisted that his client had to have had notice of the scheduled trial and, when asked why his client would arrive in work clothes if he thought he was going to a trial that day, respondent stated that Mr. Jeanpierre was “very confused about all that.” Respondent stated his client was “as ready as he ever would have been” to go to trial.

Recommendation of the Hearing Committee

The hearing committee determined there was clear and convincing evidence to support each of the formal charges. In making this determination, the committee specifically found the testimony of the ODC’s witnesses was credible, noting Judge Morvant’s testimony was corroborated by the testimony of Mr. Jeanpierre and his mother. The committee concluded respondent violated Rules 1.4(a) and 1.4(b) arising from his failure to adequately communicate with his client relative to the status of his case, especially as the scheduled jury trial approached. It also found respondent violated Rules 1.1(a), 1.2(a), 1.3 and 8.4(a), because he was unprepared to defend his client who was potentially facing a jury trial on three felony charges with minimum mandatory prison sentences. The committee reasoned respondent was simply not [ 7prepared to defend his client at trial, although his client was facing the possibility of participating in a full-blown jury trial involving three separate criminal charges. It recognized two of the criminal charges were dismissed through no perceived effort on the part of respondent. Further, the committee relied on Judge Morvant’s testimony that “respondent’s actions clearly placed his client in a position where he felt compelled to take an initial guilty plea for a mandatory prison sentence because he felt, with good reason, that his lawyer was simply not prepared to defend him in trial.”
Addressing the issue of sanctions, the hearing committee noted respondent’s actions were knowing, resulting in serious potential injury insofar as Mr. Jeanpierre could have been wrongfully incarcerated for a period of five years, an injury the committee found to be “lessened only *1022 through the fortuitous intervention of Judge Morvant.” As aggravating factors, the committee listed respondent’s prior discipline for similar misconduct,[4] the vulnerability of the victim and substantial experience in the practice of law.[5] Additionally, the committee focused on respondent’s refusal to acknowledge the harmful nature of his conduct and indifference to rectifying the consequences of his misconduct. Finally, as the only mitigating factor, the committee noted respondent’s full and free disclosures to the ODC.
Based on its findings, the committee recommended that respondent be suspended from the practice of law for a period of one year, with six months deferred, subject to a six-month period of supervised probation. It further proposed, in the event respondent is reinstated to the practice of law, he shall attend in addition to his mandatory continuing legal education four hours of continuing legal education in the | sarea of ethics and four hours of continuing legal education in the area of law office management.
Neither party filed an objection to the hearing committee’s findings.

Recommendation of the Disciplinary Board

Following its independent review of the record, the disciplinary board concluded the hearing committee’s findings of fact were supported by the record. It concurred in the committee’s determination that respondent violated Rules 1.1(a), 1.2(a), 1.3, 1.4(a), 1.4(b) and 8.4(d). Additionally, the board adopted the aggravating and mitigating factors cited by the committee.
Based on its findings, the disciplinary board adopted the committee’s proposed sanction of a one-year suspension, with six months deferred, subject to a six-month period of probation with the condition to reinstatement proposed by the committee.
Respondent filed an objection to the disciplinary board’s recommendation. The matter was therefore docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of | ¡¿he hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our review, we conclude the record supports the committee’s factual findings. The record reveals an utter lack of any meaningful preparation by respondent in connection with Mr. Jean-pierre’s trial. Respondent admits he neglected to conduct any pre-trial investigation, contact any witnesses, or file any motions on behalf of his client. But for *1023 the actions of Ms. Jeanpierre and Judge Morvant, it is abundantly clear that respondent’s neglect of this matter would have resulted in his client serving a lengthy prison sentence.
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Pursuant to the ABA’s Standards for Imposing Lauryer Sanctions, the baseline sanction for respondent’s misconduct is a suspension from the practice of law.[6] In aggravation, we note respondent’s actions are particularly egregious in light of his |innearly fifty years of experience in the practice of law and his prior discipline for very similar misconduct. Other aggravating factors are refusal to acknowledge the wrongful nature of his conduct and vulnerability of the victim. As mitigating factors, we recognize respondent’s cooperation and the lack of a dishonest or selfish motive.
We conclude the appropriate sanction for respondent’s misconduct is a one-year suspension from the practice of law. However, in light of the mitigating factors, we will defer six months of the suspension subject to the condition that following the active portion of his suspension, respondent shall be placed on probation under the supervision of a practice monitor for a period of one year.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Heyward G. Jef-fers, Jr., Louisiana Bar Roll No. 7245, be suspended from the practice of law for a period of one year. It is further ordered that all but six months of the suspension shall be deferred, subject to the condition that following the active portion of his suspension, respondent shall be placed on probation for a period of one year under the supervision of a practice monitor. Any misconduct during the probation period shall be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Mr. Jeanpierre had a prior felony conviction in West Baton Rouge Parish for possession of cocaine. He was on probation at the time of *1019 the arrest which is at issue in the instant proceedings.

. Judge Morvant testified in his deposition that it was common practice for someone to take a "best interest” plea, pleading guilty to something for which there was no bill of information pending. He maintained it was especially common in instances when a judge is faced with a mandatory penalty as an alternative. Judge Morvant believed a period of probation was appropriate under the facts. In support, he noted Mr. Jeanpierre had remained gainfully employed for over thirteen months and had not engaged in any criminal activity.

. At the conclusion of the hearing, Judge Morvant stated on the record:
Now, while we're still on the record I want you to understand one thing perfectly clear. You're here today for one reason and one reason only. I put you back on the docket on my motion, and I don't know if you were advised today that it was because of efforts made by your attorney. Mr. Jeffers didn't know about this until he showed up today. So what transpired between Monday and today is as a direct result of the court’s action, no action through your attorney.

. In 1997, this court imposed a fully-deferred 90-day suspension on respondent for similar misconduct. In re: Jeffers, 97-1414 (La. 10/10/97), 703 So.2d 591.

. Respondent was admitted to the practice of law in 1950, approximately 48 years at the time of the misconduct.

. ABA Standard 4.42 provides suspension is generally appropriate when a lawyer fails to perforin services for a client or engages in a pattern of neglect and causes injury or potential injury to a client. Standard 7.2 provides suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes serious or potentially serious injury to a client, the public, or the legal system.